UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF NEW YORK MELLON, | Case No. 2:17-CV-376 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| HOMEOWNER ASSOCIATION SERVICES, INC., et al., | |
| Defendant(s). | |

Presently before the court is defendant Starfire Estates VI Owners Association's (the "HOA") motion to dismiss. (ECF No. 8). Plaintiff Bank of New York Mellon ("BNYM") filed a response (ECF No. 13), to which the HOA replied (ECF No. 15).

Also before the court is defendant Saticoy Bay LLC Series 2708 Stargate's ("Saticoy") motion to dismiss (ECF No. 10), in which the HOA joined (ECF No. 12). BNYM filed a response. (ECF No. 14).

**I.      Facts**

This case involves a dispute over real property located at 2708 Stargate Street, Las Vegas, Nevada 89108 (the "property"). On November 8, 2004, Shawn Horter obtained a loan in the amount of $153,920.00 to purchase the property, which was secured by a deed of trust recorded on November 12, 2004. (ECF No. 1).

On March 30, 2010, defendant Homeowner Association Services ("HAS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,185.00. (ECF No. 1). On October 6, 2010, HAS recorded a notice of default and election to sell to satisfy the delinquent assessment lien. (ECF No. 1).

**James C. Mahan**
**U.S. District Judge**

On December 29, 2010, Bank of America, N.A. ("BANA") allegedly paid $2,831.47 to satisfy the full amount of the lien. (ECF No. 1 at 5). Shortly thereafter, by release of claim of lien and notice of rescission of default and election to sell, both recorded January 27, 2011, the HOA, through its agent Homeowner, released the March 30, 2010 lien and cancelled, rescinded, and withdrew the October 6, 2010 notice of default. (ECF No. 1 at 5).

The deed of trust was assigned to BNYM via an assignment of deed of trust recorded on February 28, 2012. (ECF No. 1).

On February 5, 2013, HAS recorded a notice of delinquent assessment lien, stating an amount due of $999.93. (ECF No. 1). On May 28, 2014, HAS recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $5,546.80. (ECF No. 1).

On February 2, 2015, HAS recorded a notice of trustee's sale, stating an amount due of $9,395.30. (ECF No. 1). On February 19, 2015, Saticoy purchased the property at the foreclosure sale for $45,100.00. (ECF No. 1). A trustee's deed upon sale in favor of Saticoy was recorded on March 11, 2015. (ECF No. 1).

On February 7, 2017, BNYM filed the underlying complaint, alleging five causes of action: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against HAS and the HOA; (3) wrongful foreclosure against HAS and the HOA; (4) injunctive relief against Saticoy; and (5) deceptive trade practices against HAS and the HOA. (ECF No. 1).

In the instant motions, the HOA and Saticoy move to dismiss the complaint. (ECF Nos. 8, 10).

**II.     Legal Standard**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

**James C. Mahan**
**U.S. District Judge**

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

#### A. Claims (2) through (4)

As an initial matter, claims (2) through (4) of BNYM's complaint (ECF No. 1) will be dismissed without prejudice.

Claim (4) will be dismissed, without prejudice, because the court follows the well-settled rule in that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

Claims (2) and (3) will be dismissed, without prejudice, for BNYM's failure to mediate pursuant to NRS 38.310. *See, e.g.*, Nev. Rev. Stat. § 38.310(1); *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555 (Nev. 2013). Subsection (1) of NRS 38.310 provides, in relevant part, as follows:

> No civil action based upon a claim relating to [t]he interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property . . . or [t]he procedures used for increasing, decreasing or imposing additional assessments upon residential property, may be commenced in any court in this State unless the action has been submitted to mediation.

Nev. Rev. Stat. § 38.310(1). Subsection (2) continues by stating that a "court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1." Nev. Rev. Stat. § 38.310(2). A "civil action" includes any actions for monetary damages or equitable relief. *See* Nev. Rev. Stat. § 38.300(3).

"A wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P.*, 310 P.3d at 559 (citing *Collins v. Union Fed. Sav. & Loan*, 662 P.2d 610, 623 (Nev. 1983)). "The material issue in a wrongful foreclosure claim is whether 'the trustor was in default when the power of sale was exercised.'" *Turbay v. Bank of Am., N.A.*, No. 2:12-CV-1367-JCM-PAL; 2013 WL 1145212, at *4 (quoting *Collins*, 662 P.2d at 623). "Deciding a wrongful foreclosure claim against a homeowners' association involves interpreting covenants, conditions or restrictions applicable to residential property." *McKnight Family, L.L.P.*, 310 P.3d at 559. "This type of interpretation falls under NRS 38.310." *Id.* Additionally, NRS 38.310 applies to laws "contain[ing] conditions and restrictions applicable to residential property." *Id.* at 558.

Similarly, BNYM's breach of NRS 116.1113 claim alleges a NRS violation, which requires an interpretation of the regulations and statutes that contained conditions and restrictions applicable to the property so as to fall within the scope of NRS 38.310.

BNYM's complaint alleges that BNYM "constructively exhausted" any statutory requirements because it submitted a demand for mediation on April 26, 2016, but Nevada Real Estate Division ("NRED") failed to timely schedule the mediation. (ECF No. 1 at 3). The court disagrees.

While BNYM has submitted a request for mediation, the parties have not participated in mediation. Moreover, nothing in NRS 38.330 provides that NRED's failure to appoint a mediator within 60 days constitutes exhaustion, nor does the statute place the burden on NRED to complete mediation within a specified period of time. Thus, BNYM has not exhausted its administrative remedies and must mediate certain claims prior to initiating an action in court.

Further, NRS 38.350 expressly tolls the statute of limitations applicable to BNYM's claims that are subject to mediation under NRS 38.310. Specifically, NRS 38.350 provides that "[a]ny statute of limitations applicable to a claim described in NRS 38.310 is tolled from the time the claim is submitted to mediation . . . until the conclusion of mediation . . . of the claim and the period for vacating the award has expired." Nev. Rev. Stat. § 38.350. Therefore, BNYM's claims are not prejudiced by the statute's requirement that the parties participate in mediation prior to initiating an action in court.

Consequently, BNYM must first submit its claims for breach of NRS 116.1113 and wrongful foreclosure to mediation before proceeding with a civil action. *See e.g.*, *U.S. Bank, N.A. v. Woodchase Condo. Homeowners Ass'n*, No. 215CV01153APGGWF, 2016 WL 1734085, at *2 (D. Nev. May 2, 2016); *Saticoy Bay, LLC Series 1702 Empire Mine v. Fed. Nat'l Mortg. Ass'n*, No. 214-cv-01975-KJD-NJK, 2015 WL 5709484, at *4 (D. Nev. Sept. 29, 2015).

Accordingly, claims (2) through (4) of BNYM's complaint (ECF No. 1) will be dismissed without prejudice.

. . .

. . .

**B. Quiet Title** (claim 1)

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

The holder of a first deed of trust may pay off the superpriority interest to keep its interest from being extinguished upon foreclosure of an HOA superpriority lien. *See SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also 7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

BNYM alleges that it is the beneficiary of the first position deed of trust, which still encumbers the property and is superior to any interest held by Saticoy or the HOA. (ECF No. 1). In particular, BNYM's complaint alleges that the foreclosure sale is invalid because none of the recorded documents identified the superpriority portion of the lien or specified that the deed of trust would be extinguished. (ECF No. 1 at 6).

These allegations are insufficient to state a plausible claim for relief—*i.e.*, that BNYM's claim to the property is superior to Saticoy's claim. In particular, BNYM does not assert that it did not receive the relevant notices, but rather that the notices themselves were deficient. BNYM erroneously relies on the version of Chapter 116 that is currently in effect to support its assertion that the notices were defective. The 2015 Legislature substantially revised Chapter 116. *See* 2015 Nev. Stat., ch. 266. The current version of Chapter 116, however, is not controlling here. Rather, the version of Chapter 116 that applies is the version in effect at the time the events giving rise to this action occurred.

At the time the notices were recorded, the statute did not require the notices to identify the superpriority portion of the lien, but only the amount necessary to satisfy the lien. *See, e.g.*, Nev. Rev. Stat. § 116.311635(3) (*eff.* Oct. 1, 2013 to Sept. 30, 2015) ("[T]he notice of sale . . . must include: (a) The amount necessary to satisfy the lien as of the date of the proposed sale."). The notice of delinquent assessment lien recorded February 5, 2013, stated an amount due of $999.93. (ECF No. 1). The notice of default recorded May 28, 2014, stated an amount due of $5,546.80. (ECF No. 1). The notice of sale recorded February 2, 2015, stated an amount due of $9,395.30.

(ECF No. 1). To the extent that BNYM's complaint asserts due process violations based on these same alleged notice deficiencies, these assertions fail for the same aforementioned reasons. (ECF No. 1).

BNYM's complaint does not allege that BNYM paid the amount due prior to the foreclosure sale. Nor does BNYM allege that it did not receive any of the recorded notices. Therefore, BNYM's complaint has failed to sufficiently state a quiet title claim.

Accordingly, the court will dismiss BNYM's quiet title claim without prejudice.

**C. Deceptive Trade Practices** (claim 5)

BNYM's fifth cause of action alleges deceptive trade practices against the HOA and HAS. (ECF No. 1 at 14). Specifically, BNYM alleges violations under NRS 598.0915(15), 598.092(8), and 598.0923(2)–(3). (ECF No. 1 at 14).

Subsection (15) of NRS 598.0915 and subsection (8) of NRS 598.092 define deceptive trade practice as, when a person, in the course of his or her business or occupation: "[k]nowingly makes [a] false representation in a transaction," "[k]nowingly misrepresents the legal rights, obligations or remedies of a party to a transaction," or "[u]ses coercion, duress or intimidation in a transaction." *See* Nev. Rev. Stat. §§ 598.0915(15), 598.092(8). The Ninth Circuit has held that allegations of fraud must be pled with particularity as to the "time, place, and content of an alleged misrepresentation." *Yourish v. Cal. Amplifier,* 191 F.3d 939, 993 (9th Cir.1999); *see also* Fed. R. Civ. P. 9(b).

Allegations of fraud are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud . . . ."). Rule 9(b) operates "to give defendants notice of the particular misconduct which is alleged," requiring plaintiffs to identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citations omitted). "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Id.* (citations omitted).

BNYM has not pleaded its deceptive trade practices claim with sufficient particularity so as to satisfy Rule 9's heightened pleading standard. BNYM merely alleges that the notices were deficient and that the recordings constitute a violation under NRS 598. (ECF No. 1 at 14).

Accordingly, the court will dismiss BNYM's deceptive trade practices claim without prejudice.

**IV.     Conclusion**

Based on the aforementioned, the court will grant the HOA's (ECF No. 8) and Saticoy's (ECF No. 10) motions to dismiss, and BNYM's complaint (ECF No. 1) will be dismissed without prejudice.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the HOA's motion to dismiss (ECF No. 8) be, and the same hereby is, GRANTED consistent with the foregoing.

IT IS FURTHER ORDERED that Saticoy's motion to dismiss (ECF No. 10) be, and the same hereby is, GRANTED consistent with the foregoing.

IT IS FURTHER ORDERED that BNYM's complaint (ECF No. 1) be, and the same hereby is, DISMISSED WITHOUT PREJUDICE.

The clerk is instructed to close the case.

DATED July 3, 2017.

_____
UNITED STATES DISTRICT JUDGE